IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 07-cr-00077-WDM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

PHILIP ALLEN WORACK, a.k.a. PHIL WORACK,

      Defendant.

---

## ORDER ON MOTION TO RECONSIDER ORDER ON MOTION TO DISMISS INDICTMENT AND ORDER ON *DAUBERT* ISSUES

---

Miller, J.

      This case is before me on Motions to Reconsider (doc nos 119 and 120) filed by both parties, each seeking different amendments to my June 18, 2008 Order on Motion to Dismiss Indictment (doc no 115) ("Dismissal Order").  In addition, I will address the remaining issues regarding the admissibility of certain expert opinions raised in Defendant's Motion to Conduct *Daubert* Hearing (doc no 62).

<u>Background</u>

      Defendant Worack ("Defendant" or "Worack") is charged in a four-count indictment with:  (1) conspiracy to defraud the United States for the purpose of impeding, impairing, obstructing and defeating the lawful government functions of the Internal Revenue Service in the ascertainment, computation, assessment and collection of income taxes in violation of 18 U.S.C. § 371; (2) wilfully making, subscribing, and filing a Form 1040 U.S. Individual Income Tax Return for the year 2000 misstating his income in violation of 26 U.S.C. §

7206(1); (3) wilfully making, subscribing, and filing a Form 1040 U.S. Individual Income Tax Return for the year 2001 misstating his income in violation of 26 U.S.C. § 7206(1); and (4) wilfully making, subscribing, and filing a Form 1040 U.S. Individual Income Tax Return for the year 2002 misstating his income in violation of 26 U.S.C. § 7206(1).

The details of the conspiracy as alleged in the indictment are as follows: Worack was the president and a shareholder of LKS Corporation ("LKS"), which provided consulting and financial public relations services for other companies.   Worack was paid as an independent contractor for the work he did with LKS.   Another entity, Merrill Scott & Associates ("MSA") provided services to LKS (apparently accounting and tax advice, among other things), and assisted LKS in establishing three foreign companies: Topaz, Ltd. ("Topaz"), Octagon Worldwide Ltd. ("Octagon"), and O.A.B. Enterprises, Inc., generally known as international business corporations (collectively, the "IBC" companies).

LKS was sometimes compensated with shares of stock and stock options for its services, which LKS transferred to Topaz and Octagon.   The indictment alleges that Worack and a co-conspirator, Paul Schemmel (vice president of LKS), then caused the stock to be sold and the proceeds to be transferred through OAB Enterprises bank accounts to a mortgage company and other financial entities for the personal benefit of Worack and Schemmel (many of these transactions involved offshore accounts).   These proceeds were not declared as income on Worack's tax returns.   Worack and Schemmel also made personal use of credit cards in the name of Octagon and Topaz but failed to report the value of the use of these cards as income.   Worack is alleged to have started using the Octagon credit card around April 10, 1998 and continued doing so until about February 25, 2003.   Other overt acts in furtherance of the conspiracy include Worack's

sending various faxes transferring funds from Octagon to other entities, as well as signing and filing tax returns for tax years 1998-2002.

I held evidentiary hearings on October 10, December 18, December 19, and December 20, 2007 on two central matters: (1) a hearing on the admissibility of hearsay co-conspirator statements pursuant to *United States v. James*, 590 F.2d 575 (5th Cir.1979); and (2) whether the government's expert witness would be permitted to offer his opinion regarding amounts the government claims were not properly reported on Defendant's individual tax returns, and when such amounts were taxable, pursuant to FRE 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). Of particular importance for the *Daubert* analysis and Defendant's Motion to Dismiss Indictment (doc no 51), which are intertwined, is the issue of when the income was received by Defendant and required to be reported as taxable income on his tax forms.[1]

By means of his own expert, A.J. Robbins ("Robbins"), Defendant contends that, pursuant to the tax code, nearly all the income from the stock transfers at issue was received by Defendant much earlier than is alleged in the indictment and by the government's expert witness, Revenue Agent Peter Shepka ("Shepka"). Agent Shepka's testimony indicated that he used one methodology for determining the year that the income was taxable for civil audit purposes and used a different methodology for the criminal proceedings. Specifically, for the purposes of the civil audit, Shepka apparently considered the income to Defendant to be a constructive dividend from LKS, generally realized or

---

[1]Because there has been some confusion over the appropriate terminology, I will take this opportunity to clarify that "receipt" of income is the operative event triggering tax liability. 26 C.F.R. § 1.451-1. Accordingly, I will attempt to use this term consistently to mean that the income is taxable the year it is received.

received at the time the stock in the brokerage accounts of Topaz/Octagon was sold.[2]

However, for the purposes of the criminal prosecution, Shepka opined that the income was

received, and thus reportable, at the later time that Defendant spent or "repatriated" the

proceeds of the stock sales by receiving cash, using the credit cards from the offshore

banks, or having money sent directly to a third party for the benefit of Defendant, for

example, for the purchase of an automobile or to pay off a mortgage.  As a result, Shepka

concluded that the income was taxable much later for the purposes of the criminal

proceeding than he did in the civil audit.[3]   Defendant's expert witness, Robbins, offered

contrary testimony, specifically opining that LKS was essentially a mere conduit to the

individual shareholders (Worack and Schemmel) and that the income should be considered

to have been received by Defendant when the stock was transferred and non-forfeitable

to LKS.  Following the evidentiary hearings, and particularly with respect to expert witness

questions and the motion to dismiss, I ordered the parties to submit supplemental briefing

"as to whether the income was earned and reportable the years the stock was transferred

or rather in the years that the government asserts benefit was achieved and how those two

theories impact the question of whether or not the defendant was timely charged."  Hearing

Tr., Dec. 20, 2007, at 529.

---

[2]The portion of a distribution of property by a corporation to its shareholder that
constitutes a dividend is part of a taxpayer's gross income.  26 U.S.C. § 301*; see also
Wortham Mach. Co. v. United States,* 521 F.2d 160, 164 (10th Cir.1975) ("A
constructive dividend is paid when a corporation confers an economic benefit on a
stockholder without expectation of repayment.").

[3]Shepka rationalized these conflicting opinions because of the higher burden of
proof–beyond a reasonable doubt –in criminal prosecutions than in civil
collections–preponderance of evidence.  Hearing Tr., Dec. 19, 2007, at 201.

After receiving the supplemental briefs and reviewing the evidence presented, I concluded that there was no legal support for Shepka's opinion that the income should have been considered taxable when it was "repatriated" or used by Worack. Rather, the tax code provides that stock is taxable when "received," meaning transferable or not subject to a substantial risk of forfeiture. 26 U.S.C. § 83(a); 26 C.F.R. 1.83-3(c). I did not decide exactly when this occurred, but set as an outside limit the time that Worack actually caused the stock to be sold through the brokerage accounts. Since the evidence indicated that no activity that could even arguably be considered "receipt" of stock or proceeds had occurred in 2002, I concluded that the undisputed evidence showed that Worack could not have made a false statement on his tax return for 2002 (Count Four) and dismissed that count.

Most importantly, given the parties' briefing and arguments at that point, my June 18, 2008 order was expressly based on the assumption that Defendant "had complete dominion and control over [the relevant] entities so that their organizational structures could be disregarded when determining when income was received or earned. In short, the stock options earned by LKS are considered to have passed through LKS and other entities to Defendant . . . as [his] personal income." Dismissal Order at 3. The government now disputes that assumption, asserting that the income was not received nor earned by Defendant until actually spent or "repatriated," and, in any case, when the income was received is a disputed factual issue to be determined by the jury at trial.

Discussion

A.      Government's Motion to Reconsider

In my order dismissing Count Four of the indictment, I was guided by the following:

"An indictment is sufficient if it sets forth the elements of the

5

> offense charged, puts the defendant on fair notice of the
> charges against which he must defend, and enables the
> defendant to assert a double jeopardy defense." Challenging
> an indictment is not a means of testing the strength or
> weakness of the government's case, or the sufficiency of the
> government's evidence. Rather, "[a]n indictment should be
> tested solely on the basis of the allegations made on its face,
> and such allegations are to be taken as true." Courts should
> therefore avoid considering evidence outside the indictment
> when testing the indictment's legal sufficiency.

*United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (internal citations omitted).

However, in "limited circumstances," a district court may dismiss charges at the pretrial

stage where the operative facts are undisputed and the government fails to object to the

district court's consideration of those undisputed facts in making the determination

regarding a submissible case. *Id.* at 1068. Pretrial dismissal based on undisputed facts

is a determination that "as a matter of law, the government is incapable of proving its case

beyond a reasonable doubt" and is a "rare exception," not the rule. *Id.* Dismissals under

this exception are not made on account of a lack of evidence to support the government's

case, but because undisputed evidence shows that, as a matter of law, the Defendant

could not have committed the offense for which he was indicted. *Id.*

As I noted in considering Counts Two through Four, subscribing to false tax returns,

"the key issue in determining whether Worack's statements were false is when the allegedly

taxable income was required to be declared in a proper return to the IRS." Dismissal Order

at 5. I further ruled:

> The case law and statutory authority cited by Defendant
> generally support his argument that, as a cash basis filer, he
> was required to declare the income in the years that the stock
> was "received" (but not when it was "earned"). 26 U.S.C. §
> 83(a); *Racine v. Commissioner*, 493 F.3d 777, 778 (7th Cir.
> 2007). It is undisputed that Worack had actual or constructive

6

control over the stock more than six years before the indictment was filed, but this alone does not resolve the issue of receipt or transfer pursuant to the tax code.  Neither party really addressed this issue in their supplemental briefs, although Defendant's expert witness, Mr. Robbins, discussed the issue.   Specifically, restricted stock is considered transferred (i.e., taxable) whenever it is non-forfeitable and transferable without forfeiture or penalty.  26 C.F.R. 1.83-1(a) ("property transferred to an employee or independent contractor . . . in connection with the performance of services" is not taxable "until it has been transferred to such person and becomes substantially vested" and shall be included as gross income "for the taxable year in which the property becomes substantially vested.")  Property is substantially vested when it is either transferable or not subject to a substantial risk of forfeiture.  26 C.F.R. 1.83-3(c).

Dismissal Order at 6.

The government objects to the dismissal of Count Four and my legal conclusions on the grounds that several facts were not undisputed, including that Worack had "actual or constructive control over the stock" at the time that it was transferred by LKS's clients and that the brokerage accounts were his [rather than those of the sham corporations set up by MSA].   The government also disagrees with the assumption that Worack had complete dominion and control over LKS and the IBCs such that their organizational structures could be disregarded in determining when income was received and earned. The government argues that Worack's actions with respect to the IBCs was as an agent of LKS and the income remained that of LKS until actually converted to personal use by Worack.  The government asserts that 26 U.S.C. § 83(a) (which requires that a "person" who is paid in stock for performing a service  is required to declare the value of the stock as income) applies to LKS, not to Worack.  Finally, the government notes that the evidence presented at the hearing was offered only for the limited purpose of resolving the *Daubert*

7

issues relating to the admissibility of expert testimony.  The government explains that, although some evidence was not disputed for the purposes of the hearing, it has additional evidence and does not concede that the key facts are undisputed.

Under the standard stated in *Todd*, the facts must be both undisputed and the government must fail to object to "the district court's resort to evidence beyond the four corners of the indictment."  *United States v. Hall*, 20 F.3d 1084, 1087 (1994).   In light of this strict standard, the reality that the previously assumed facts are now disputed mandates that I reconsider my order dismissing Count Four.   The issues of control and constructive receipt should be determined by the jury.[4]   Devoid of the key factual assumptions regarding when the income from the stock transfers at issue were received by Worack (as defined by the tax code), my Dismissal Order must be vacated.

B.    Defendant's Motion to Reconsider

Worack argues that the undisputed evidence shows that all the remaining counts should be dismissed.  In my Dismissal Order, I noted that the only activity that appeared to be taxable within the statute of limitations was the exercise of Homeseekers warrants in March 2000 and receipt by LKS of Cardxx stock in October 2001.  Defendant seeks to take this as fixed to show that no additional tax would have been owed for those years and, therefore,  Counts Two and Three should also be dismissed.  I disagree.  As noted above,

[4]The government argues that the stock and its proceeds continued to be the property of LKS even after it was transferred to Octagon, Topaz, or OAB Enterprises. As support, the government contends that Worack and Schemmel were not incorporators, shareholders, or employees of these entities, and had no signatory authority.  The government appears to argue that even after the stock was transferred to the brokerage accounts of the IBCs, Worack still did not have "actual or constructive" control because he had to act through MSA to issue orders to the banks in the Bahamas and the stock and proceeds were not segregated or set aside for Worack.

now there are certainly factual issues as to when the income was received by, and taxable to, Worack and dismissal is not appropriate.

Worack again argues that the conspiracy charge should also be dismissed because the last act alleged to be in furtherance of the conspiracy was the filing of a false return for 2002 (i.e., the underlying act of the dismissed Count Four). However, there are other acts arguably done in furtherance of the conspiracy, including using the credit cards, etc., that were within the statute of limitations. Accordingly, Defendant's motion to reconsider will be denied.

C.    *Daubert* issues

The government's Summary of Testimony to be Offered Under Rules 702, 703, and 705, Federal Rules of Evidence (doc no 56) sets forth the expert testimony it proposes to offer at trial. The principal disputed issue concerns the government's proposed opinions about the U.S. Individual Tax Returns filed with the IRS by Defendant and his wife for the years 1998 to 2002. Summary at 8. Defendant argues that these opinions should not be admitted as flawed because the tax law and principles of accounting do not support taxing the proceeds of the stock transactions in this manner.

When faced as here with a proffer of expert testimony I should preliminarily determine "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). This "gate-keeping" function applies to all expert testimony proffered under Fed. R. Evid. 702. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (extending *Daubert's* holding on scientific expert testimony to all expert testimony). The objective of the function "is to

insure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* at 152.

Accordingly, when faced with a challenge to proffered expert testimony *Kumho* mandates a two-part inquiry: (1) does the expert testimony have a reliable basis; and (2) is it relevant.  *Bitler v. A.O. Smith Corp.* 400 F.3d 1227, 1233-34 (10th Cir. 2004).  There is no dispute as to the relevancy and Defendant's challenge, therefore, focuses on the reliability inquiry.

Determining reliability also involves a two-step analysis: (1) whether the expert is qualified to render the proffered opinion; and (2) whether the opinion is reliable under the *Daubert* principles.  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  Defendant does not contest the qualifications of either agent and, accordingly, my sharper focus becomes whether the proffered testimony about when income was taxable to Defendant is reliable.  I have "considerable leeway" in making that determination, *Kumho*, 526 U.S. at 152, and  Rule 702 provides basic guidelines: (1) is the testimony based upon sufficient facts or data; (2) is the testimony the product of reliable principles and methods; and (3) has the expert applied those principles and methods reliably to the facts of the case.  *Daubert* suggested several factors to consider when examining reliability but they are not exclusive and many different factors may be appropriate.  *Bitler*, 400 F.3d at 1234; *Weinstein's Evidence Manual*, § 13.02[4][b] (2007).

Applying these principles to the issues of this case has been difficult.  As sponsor of the evidence, the government has the burden of persuading me that the evidence is

10

admissible, *Daubert*, 509 U.S. 592 n. 10, but it has been elusive in defining the legal bases

or principles upon which its expert opinion has been based. In its brief following the

hearings, the government argued only that the date of receipt of income by Defendant was

an issue of fact, without explaining what legal theory would guide this determination. It was

only after I had ruled, based upon the assumed fact of dominion and control over the

relevant entities by Defendant, that the government based its motion to reconsider on case

law relating to constructive dividends to determine when corporate property passes to the

shareholder as taxable income. *See Stone v. Comm'r of the Internal Revenue Serv.*, 865

F.2d 342, 343 (D.C. Cir. 1989) "[E]ven when a corporate officer is its sole shareholder . .

. and he transfers corporate funds to his personal checking account, and his dealings with

the corporation are 'extremely informal,' there is no constructive dividend so long as he can

show that his intent was to use such funds for corporate purposes as an agent of the

corporation.") (quoting *Nasser v. United States*, 257 F.Supp. 443, 449 (N.D. Cal. 1966));

*Zhadanov v. Comm'r of Internal Revenue Serv.,* T.C.M. (RIA) 2002-104, 2002 WL 731708

(examining whether corporate monies kept in the safe of individual shareholders were

constructive dividends taxable to the shareholders or still corporate property; control can

be evidence of a constructive dividend, but it is not alone determinative).

Further, government now declares that it will not be offering Shepka's testimony[5] on

this issue but will rather rely on the testimony of Revenue Agent R. Jonathan Lynch

("Lynch"), who also testified at the December 19, 2007 hearing. As opposed to Agent

---

[5]At a later hearing counsel for the government acknowledged that Agent Shepka presented two different opinions on receipt which counsel labeled as "inconsistent" and declared "that our plan was not to call Mr. Shepka, but rather call Lynch and to redo the hypothetical with Mr. Lynch." Hearing Tr., Oct. 15, 2008 (doc no 125) at 37.

Shepka who based his opinion on a distinction between civil and criminal law consequences, Lynch simply responded to a series of hypothetical questions apparently designed to approximate Defendant's actions.  Ultimately, Lynch rendered the opinion that the assets held by LKS or other entities were not reportable income for the Defendant until he realized the economic benefit by actual payment in later years.  Hearing Tr., Dec. 19, 2007, at 393.  When presented with the scenario where the stock was held by a corporation when converted to cash in one year and the cash was then paid for the benefit of the individual taxpayer in a subsequent year, Lynch concluded that the income was realized in the second year and prior to that time the proceeds were assets of the corporation.  *Id.*

1.  Sufficiency of Facts and Data.

Applying the three prong standards of Rule 702 to determine the reliability of the opinions, I begin with the inquiry whether the witnesses possessed sufficient facts or data relevant to the inquiry.  The record indicates that Agent Shepka had conducted an extensive review of the financial and legal activity of Defendant and the related entities.  Accordingly, Agent Shepka satisfies this prerequisite for offering admissible opinion evidence.  On the other hand, Agent Lynch responded only to hypothetical questions and no record was made that he had any familiarity with the facts or data relevant to the Defendant and the related entities.  Accordingly, as presented, Agent Lynch has not demonstrated a factual foundation upon which he could render admissible opinion evidence.

2.  Reliable Principles and Methods.

Turning to the issue of whether the tendered testimony is based upon a reliable methodology, I will begin with the testimony of Agent Shepka.  Ultimately, his opinion was

12

that Defendant was a cash basis taxpayer who was required to report the income the year he received the benefit of it, years 2000, 2001and 2002.   Hearing Tr., Dec. 18, 2007, at 222.   Upon cross examination, however, he was confronted with his previous civil audit when he concluded that Defendant received the income earlier, namely at the time LKS transferred the stock to Octagon or Topaz in 1996 to 1999 because those entities were controlled by Defendant and should be considered as constructive dividends to Defendant at those times and not at a later time when he actually received the cash or the benefit of bills being paid:

> A.   In the civil case at a point in time based on the information that I had, I calculated that LKS had income via the receipt of the stock.  And when that stock went to either Octagon or Topaz broker accounts, that was–I consider that a constructive dividend to the shareholders at that point in time, yes, for civil purposes.
>
> Q.  Well, okay.  But you were looking for unreported taxable income, correct?
>
> A.  Sure.
>
> Q.   And you determined that when these particular shares were, in fact, received into the accounts of Octagon or Wide, Ltd. and Topaz, Ltd., that there was a constructive dividend out of the earnings and profits of LKS to Mr. Worack, correct?
>
> A.  Yes.
>
> Q.  Because it was taxable to him at that time, correct?
>
> A.  Yes, for civil purposes, yes.

Hearing Tr., Dec. 19, 2007, at 300.  *See also* Exhibit 15, Internal Revenue Form 886-A, prepared by Agent Shepka, that stock received for services rendered by LKS transferred into brokerage accounts controlled by the Defendant were "deemed dividends."  Hearing Tr., Dec. 19, 2007, at 350.

Agent Shepka's only explanation for these apparent inconsistent opinions was that there was one answer for civil tax purposes and another for criminal because of differing burdens of proof.  For the higher burden of proof of beyond a reasonable doubt  in criminal proceedings he concluded the standard should be was when there was a direct benefit to the taxpayer as opposed to when the taxpayer controlled the asset.  Hearing Tr., Dec. 19, 2007, at 300-1.   However, he did not provide any basis in law or regulation for this conclusion and no reference was made to any authority such as generally accepted auditing standards or any recognized tax manual or publication.  Indeed, when asked to provide case authority for his later opinion Agent Shepka responded that he could not cite a court case, stating that was not his purview.  "My purview is to analyze the information that I had to put forth a position to–in conjunction with Mr. Carter to the attorneys and the attorneys put forth a position that will either be supported or nonsupported."  Hearing Tr., Dec. 19, 2007, at 348.  Rather than providing authority, this response suggests an *ex post facto* rationalization to justify a claim.

Agent Shepka's opinion appears to be unmoored from the relevant statutory authority governing the issues of this case.  In concluding that the taxpayer here did not receive this income until he essentially spent the money, the agent disregards some core principles of tax law.  First, the tax code makes clear that, for a cash basis filer, income is taxable when it is either actually or constructively received.  26 C.F.R. § 1.451-2(a) ("Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise <u>made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been</u>

14

given.") (emphasis added); *Ross v. Comm'r of Internal Revenue*, 169 F.2d 483, 490 (1st Cir.1948) (doctrine of constructive receipt treats as taxable to cash basis taxpayer income not yet reduced to possession but nevertheless controlled by the taxpayer). The evidence suggests that Worack could, and did, exercise control over the stock, its sale and the disposition of the stock proceeds; however, the agent does not address this issue at all (indeed, he completely ignores or discounts it). Similarly, he did not address whether the form of the transactions was being elevated over their substance, which also violates the essential principles guiding enforcement of the tax code. *Comm'r of Internal Revenue v. Court Holding Co.*, 324 U.S. 331, 334 (1945) ("To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liability would seriously impair the effective administration of the tax policies of Congress.").

The government has simply failed to present any evidence to demonstrate that Agent Shepka's opinion is "the product of reliable principles and methods," as required by Rule 702(2). The government's proffer fails to meet *Daubert* standards as the opinion is not based upon any tested methodology, Shepka's approach was not subjected to any peer review and certainly there has been no showing of general acceptance of this opinion. *See Daubert*, 509 U.S. at 593-94. No purpose is served by applying unknown methodology to the facts of this case. Accordingly, as presented, Shepka's opinion that receipt did not occur until dates alleged in the indictment is objectionable and not admissible under Fed. R. Evid. R. 702.

The same ruling applies to Agent Lynch's hypothetical opinion as the proffer is likewise devoid of reliable principles or methodologies and there is no indication that his

opinion was based upon all the relevant facts and data concerning the issues.

Accordingly, it is ordered:

1.  The Government's Motion to Reconsider (doc no 119) is granted in part.  My June 18, 2008 order dismissing Count 4 (doc no 115) is vacated.

2.  Defendant's Motion to Reconsider (doc no 120) is denied.

3.  The opinions expressed by Revenue Agents Lynch and Shepka, namely that Defendant received the claimed taxable income in the years 2000, 2001 and 2002 only when he spent or "repatriated" the proceeds derived from the sale of stock, are objectionable and not admissible under Fed. R. Evid. 702 for the reasons stated.

4.  The Government's Motion for Status Conference (doc no 126) is granted and the parties shall immediately schedule a status conference to occur no later than December 30, 2009.  Counsel may appear by phone.

DATED at Denver, Colorado, on November 25, 2009.

BY THE COURT:


s/ Walker D. Miller
United States District Judge